1  Todd M. Friedman (SBN 216752)
2  LAW OFFICES OF TODD M. FRIEDMAN, P.C.
   21550 Oxnard St., Suite 780
3  Woodland Hills, CA 91367
4  Phone: 877-206-4741
   Fax: 866-633-0228
5  tfriedman@ toddflaw.com

6  **GREG COLEMAN LAW PC**
7  Gregory F. Coleman*
   Email: greg@gregcolemanlaw.com
8  First Tennessee Plaza
9  800 S. Gay Street, Suite 1100
10 Knoxville, TN 37929
   Telephone: (865) 247-0080
11 Facsimile: (865) 522-0049
12 * *Pro hac vice* pending

13 *Attorneys for Plaintiff*
14 *Additional Attorneys on Signature Page*

15           **IN THE UNITED STATES DISTRICT COURT**
16          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                        **WESTERN DIVISION**
17

18 | TIFFANY HARRIS, individually and on | Case No._____ |
19 | behalf of all others similarly situated, | |
   | | **CLASS ACTION COMPLAINT** |
20 | Plaintiff, | |
21 | | |
22 | v. | **JURY TRIAL DEMANDED** |
23 | LSP PRODUCTS GROUP, INC. and | |
   | NCH CORPORATION, | |
24 | | |
25 | Defendants. | |

26
27                   **CLASS ACTION COMPLAINT**
28
   Plaintiff Tiffany Harris ("Plaintiff"), individually and on behalf of all others

                              1

similarly situated, brings this action against Defendants LSP PRODUCTS GROUP, INC. ("LSP") and NCH Corporation ("NCH") (collectively, "Defendants"). In support thereof, Plaintiff alleges as follows based upon personal knowledge, information and belief as to the acts and knowledge of others, and the diligent investigation of counsel.

## NATURE OF THE ACTION

1.     Defendant LSP manufactures and markets braided steel water supply lines under various brand names, including but not limited to Aqua-Flo® MightyFlex™. Braided supply lines (hereinafter, the "Braided Lines") are used to supply both hot and cold water to common household fixtures including kitchen and bathroom faucets, toilets, and dishwashers.

2.     Although the Braided Lines have a variety of uses (as listed above), these lines have certain common features. Each line consists of a flexible inner tubing which is covered by tightly braided stainless steel wires and has a nut on each end of the line. The nuts, which are either metal (called a compression nut or coupling nut) or plastic (typically called a coupling nut on toilet supply lines), serve the purpose of connecting the water supply line from a water source to an appliance or fixture. Each Braided Line is sold as a single unit that must be replaced as a single unit if or when any of its components fail. No component parts of the line are individually replaceable or reparable.

3.     In October 2015, the compression nut of Plaintiff Tiffany Harris's LSP

CLASS ACTION COMPLAINT

Products Group water supply line broke which caused flooding on the first floor of

her property. No one was present at the residence when the water supply line failed

as a result of the broken nut, and because no one would be in the home for an

extended period of time, the flooding was not noticed until approximately 3 to 4

days later by a neighbor. At the time of discovery, mold had begun growing in the

residence as a result of the flooding.  The flooding and mold damaged the floors,

carpeting, and walls which cost Plaintiff approximately $30,000 in replacement and

repairs.

4.    This lawsuit arises out of damages sustained by Plaintiff and the Class

that were proximately caused by LSP's defective Braided Lines.

5.    Plaintiff brings this class action against LSP on behalf of herself and

all similarly situated individuals and entities in the State of California that

purchased and/or owned LSP Braided Lines (the "Class").

6.    As alleged further herein, LSP's Braided Lines include a compression

nut insert that fails due to cracking and branching fractures resulting from stress

corrosion. Therefore the Braided Lines are uniformly defective and unsafe, posing a

substantial risk of failure, and in fact, routinely and catastrophically fail. Due to the

nature of the product itself, the first failure renders an entire Braided Line useless.

7.    The defect in the LSP Braided Lines are so severe that the Plaintiff and

Class Members must replace and discard their Braided Lines sooner than

reasonably expected, often following significant water damage to their real and

CLASS ACTION COMPLAINT

personal property from the Lines' failure.  Far from the dependable, heavy-duty parts that LSP represents them to be, the defective Braided Lines are inevitable failures waiting to happen.

8.  Upon information and belief, thousands of Braided Lines that include the defective compression nut insert are still in use and LSP is aware that they are still being sold, distributed, and installed in residential and commercial buildings across California and the United States.

9.  Despite LSP's representations regarding the high quality and dependability of its Braided Lines, LSP knows and has known of the defect alleged herein and that there was a substantial risk that its Braided Lines would break or otherwise fail.  LSP has failed to disclose that risk to consumers.

10.  Plaintiff seeks to recover, for herself and the Class, all costs associated with repairing, removing and/or replacing the defective Braided Lines, as well as the costs of repairing any damage to property caused by the failure of the Braided Lines to perform as represented and warranted.  Plaintiff also seeks declaratory and injunctive relief requiring LSP to modify its unfair and fraudulent practices so as to uniformly provide relief in accordance with its obligations under the law.

## **PARTIES**

### **Plaintiff**

11.  Plaintiff Tiffany Harris is a resident and citizen of Pasadena (Los Angeles County), California, and owns a vacation home where her Braided Line

4

CLASS ACTION COMPLAINT

broke and caused substantial damage to her real and personal property.

**Defendants**

12.     NCH Corporation ("NCH") is a corporation incorporated in Delaware, but headquartered at 2727 Chemsearch Blvd., Irving, TX 75062. It advertises itself as a global leader in industrial, commercial, and institutional maintenance products and services, listing LSP Products Group, Inc. as one of its many subsidiary brands and divisions.

13.     Upon information and belief, Defendant LSP Products Group, Inc. ("LSP") is a Nevada corporation, headquartered at 3689 Arrowhead Dr., Carson City, NV 89706, and is a subsidiary of NCH.

14.     LSP conducts substantial business in California and throughout the United States, including the sale and distribution of its Aqua-Flo Braided Lines.

15.     LSP and NCH are collectively referred to as "LSP" or "Defendants" throughout this complaint, unless individually identified otherwise.

**JURISDICTION AND VENUE**

16.     This Court has jurisdiction over this class action pursuant to 28 U.S.C. §1332(d), as this matter is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure. Moreover, there are more than 100 Class Members residing in multiple states, and the amount in controversy exceeds Five Million Dollars ($5,000,000.00).

17.     The requirement of minimal diversity is met as the dispute is between

CLASS ACTION COMPLAINT

citizens of different states. Plaintiff is a citizen of California, Defendant LSP is incorporated and headquartered in Nevada, and Defendant NCH Corporation is a global corporation incorporated in Delaware and headquartered in Texas.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, *et seq.* because a substantial part of the events or omissions giving rise to the claim occurred in this District. Additionally, Defendants regularly conduct substantial business in California, including the sale and distribution of its Braided Lines.

## **PLAINTIFF'S FACTS**

19.     In or about March 2013, an LSP Braided Line, bearing the "Aqua-Flo Mighty Flex" brand name, was installed at her vacation home, located in Truckee, California, in a ground level half bathroom.  The line itself was a 16" long stainless steel braid reinforced flexible water supply line manufactured by LSP. On one end it had a white polymeric coupling nut, and on the other end it had a 3/8" nickel-plated brass compression nut with a brass insert. The line was used to connect the toilet to the water supply.

CLASS ACTION COMPLAINT

20.     In October 2015, Plaintiff's Braided Line broke while Plaintiff and her family were out of town from the residence. Specifically, the brass insert of the compression nut fractured. As a result, water gushed from the broken waterline, flooding the first floor of her home. By the time the flooding was discovered by a neighbor—presumably several days after the break occurred—much of the first floor of the house was water-soaked and mold had begun to grow. This flooding damaged the structure of the home, including the floors, ruining newly installed carpeting and hardwood flooring, and damaged the walls and framing.  Plaintiff



incurred in excess of $30,000.00 in costs to repair the damage caused by the defective LSP Braided Line, including approximately $15,000.00 for drying, mold remediation, demolition, and removal of damaged materials.

21.     Above is a photograph of the end of the Line, the compression nut and the broken compression nut insert of the Plaintiff's LSP Braided Line.

22.     Had LSP disclosed the propensity of Braided Lines to spontaneously

CLASS ACTION COMPLAINT

break and fail, Plaintiff would not have had the LSP Braided Line installed in her home, exposing her real and personal property to flooding and exposing her and her family to safety risks.

## SUBSTANTIVE ALLEGATIONS

23.    Defendants designed, manufactured, assembled, tested, labeled, marketed, advertised, and offered for distribution and sale defective Braided Lines with the specific purpose that they be installed by builders, plumbers, and consumers in homes and other buildings throughout the United States.  These braided supply lines were introduced as a safe and superior alternative to rigid metal pipes with shutoff valves. These Braided Lines were lauded as safe products that were of merchantable quality and fit for their intended and reasonably foreseeable uses.

24.    Braided stainless steel supply lines are used to transport water from a supply pipe to a plumbing fixture (e.g., a toilet, faucet, dishwasher, etc.).  The lines primarily consist of three parts: the inner flexible tubing, the outer braided steel wire designed to protect it, and the nut (with insert) which connect the lines to either the water supply or adjacent plumbing fixtures.  Because they can be installed in tight spaces, braided stainless steel supply lines have found widespread application in residential and commercial plumbing.

25.    Defendants, however, knowingly failed to disclose that the Braided Lines include a compression nut and insert that, as a result of serious materials

CLASS ACTION COMPLAINT

problems, fail due to stress corrosion cracking and branching fractures. Thus the Braided Lines are uniformly defective and unsafe, posing a substantial risk of failure. As a result of the inferior quality of the compression nut and its insert, the Braided Lines break, resulting in flooding that causes damage to real and personal property. Even after their Braided Lines began failing, Defendants failed to notify consumers of the defect.

26.     In recent years, losses due to water leaks, flooding, and mold damage caused by faulty and defective supply lines have risen.  The Braded Line compression nuts and inserts fail under normal use due to their materials defect.

**A.     LSP's Claims Regarding Product Quality**

27.     On LSP's website, consumers find a number of representations from the company regarding the allegedly high-quality materials from which LSP's Aqua-Flo products are made, their "unmatched" durability, and allegedly long, useful, lifespan:

Aqua-Flo® has been part of the LSP family for over 20 years. As the innovation and quality standard bearer in water connectors and valves, Aqua-Flo's® performance and durability is unmatched in the market place. Aqua-Flo® developed the majority of the connectors available to the plumbing industry today. It introduced stainless steel braided connectors to the U.S. It developed the first NSF certified connector liner with its patented Ultracore® tubing to resist attacks to the

CLASS ACTION COMPLAINT

connector liner from chemicals found in most modern potable water systems. As we continue to push the technological envelope on new materials, LSP has developed better and tougher corrugated stainless and copper water heater connectors.

https://www.lspproducts.com/product-category/aquaflo/ (last visited November 22, 2017).

28.    LSP's marketing is clear and unambiguous:  consumers can depend on the company's products—including its Aqua-Flo MightyFlex brand Braided Lines and its virtually identical Braided Lines that are sold under different brand names—because LSP is the "quality standard bearer" in water connectors and valves, and their products' performance and durability is "unmatched in the market place."

**B.    LSP's Braided Lines**

29.    LSP manufactures braided stainless steel supply lines, including its Aqua-Flo® MightyFlex™ Stainless Steel Braided supply lines, and others—identical in all material ways—which are sold under different brand names.  All of these Braided Lines are the subject of this lawsuit.

30.    LSP's Braided Lines typically retail for between $2.00 to $20.00, depending on the length of the line and the type of fixture. The specific line of products that are the subject of this lawsuit include but may not be limited to those in the chart below (Plaintiff reserves the right to narrow or expand the product

CLASS ACTION COMPLAINT

definitions as clarified through discovery):

https://www.lspproducts.com/product/mightyflex-stainless-steel-braided2/ (last

| FAUCET CONNECTORS | | |
|---|---|---|
| PART NUMBER | DESCRIPTION | LENGTH |
| SFC-109-PP | 1/2" FIP Soft Cone x 3/8" Soft Compression | 9" |
| SFC-112-PP | | 12" |
| SFC-116-PP | | 16" |
| SFC-120-PP | | 20" |
| SFC-124-PP | | 24" |
| SFC-130-PP | | 30" |
| SFC-136-PP | | 36" |
| SFC-148-PP | | 48" |
| SFC-196-PP | | 96" |
| SFC-312-PP | 1/2" FIP Soft Cone x 1/2" Compression Soft Cone | 12" |
| SFC-316-PP | | 16" |
| SFC-320-PP | | 20" |
| SFC-324-PP | | 24" |
| SFC-330-PP | | 30" |
| SFC-348-PP | | 48" |
| SFC-409-PP | 1/2' FIP Soft Cone x 1/2" FIP Soft Cone | 9" |
| SFC-412-PP | | 12" |
| SFC-416-PP | | 16" |
| SFC-420-PP | | 20" |
| SFC-424-PP | | 24" |
| SFC-430-PP | | 30" |
| SFC-436-PP | | 36" |
| SFC-448-PP | | 48" |
| SFC-506-PP | 3/8" Soft Compression x 3/8" Soft Compression | 6" |
| SFC-509-PP | | 9" |
| SFC-512-PP | | 12" |
| SFC-516-PP | | 16" |
| SFC-520-PP | | 20" |
| SFC-524-PP | | 24" |
| SFC-530-PP | | 30" |
| SFC-548-PP | | 48" |
| SFC-572-PP | | 72" |
| SFF-112-PP | 1/2" FIP Soft Cone x 3/8" Flare | 12" |
| SFF-116-PP | | 16" |
| SFF-120-PP | | 20" |
| SFF-130-PP | | 30" |
| SFF-312-PP | 1/2" FIP Soft Cone x 1/2" Flare | 12" |
| SFF-316-PP | | 16" |
| SFF-320-PP | | 20" |
| SFF-330-PP | | 30" |

| TOILET CONNECTORS | | |
|---|---|---|
| PART NUMBER | DESCRIPTION | LENGTH |
| SFT-109-PP | 7/8" Soft Cone Ballcock x 3/8" Flare | 9" |
| SFT-112-PP | | 12" |
| SFT-116-PP | | 16" |
| SFT-120-PP | | 20" |
| SFT-309-PP | 7/8" Soft Cone Ballcock x 1/2" Flare | 9" |
| SFT-312-PP | | 12" |
| SFT-316-PP | | 16" |
| SFT-320-PP | | 20" |
| SWC-106-PP | 7/8" Soft Cone Ballcock x 3/8" Soft Compression | 6" |
| SWC-109-PP | | 9" |
| SWC-112-PP | | 12" |
| SWC-116-PP | | 16" |
| SWC-120-PP | | 20" |
| SWC-306-PP | 7/8" Soft Cone Ballcock x 1/2" Compression Soft Cone | 6" |
| SWC-309-PP | | 9" |
| SWC-312-PP | | 12" |
| SWC-316-PP | | 16" |
| SWC-320-PP | | 20" |
| SWC-406-PP | 7/8" Soft Cone Ballcock x 1/2" FIP Soft Cone | 6" |
| SWC-409-PP | | 9" |
| SWC-412-PP | | 12" |
| SWC-416-PP | | 16" |
| SWC-420-PP | | 20" |
| SWC-406-PP | 7/8" Soft Cone Ballcock x 1/2" FIP Soft Cone | 6" |
| SWC-409-PP | | 9" |
| SWC-412-PP | | 12" |
| SWC-416-PP | | 16" |
| SWC-420-PP | | 20" |
| KWC-109-PP | 7/8" Soft Cone Ballcock x 3/8" Compression Hard Cone | 9" |
| KWC-112-PP | | 12" |
| KWC-116-PP | | 16" |
| KWC-120-PP | | 20" |
| KWC-309-PP | 7/8" Soft Cone Ballcock x 1/2" Compression Hard Cone | 9" |
| KWC-312-PP | | 12" |
| KWC-316-PP | | 16" |



3689 Arrowhead Drive, Carson City, NV 89706

accessed December 5, 2017).

31.    LSP's Braided Lines are identifiable by the products' labels, specific

unique markings that are stamped or etched onto the crimp sleeve located at the end

CLASS ACTION COMPLAINT

of the line, the crimp sleeve style, the braiding's weave patterns, and other physical characteristics that are unique to and identifiable as LSP products.

32.   LSP does not instruct its customers to inspect their Braided Lines for signs of stress corrosion cracking or branching fractures, nor is this type of defect typically discernable to an untrained person or without magnification.

## C.   LSP's Warranty

33.   LSP provides a one-year limited express warranty on each of its Braided Lines.[1] Pursuant to this standard warranty, LSP promises to replace the product "free of charge" if the product fails due "to defect in material or workmanship."  LSP may also provide a refund of the purchase price under its warranty.

## D.   Braided Lines Are Defective

34.   At all times relevant to this Complaint, and prior to the purchase by the Plaintiff and Class Members of their Braided Lines whether directly or through their agents, Defendants were aware that their Braided Lines contained an inherent materials defect that caused them to break, leak, and fail, and LSP was aware that the defect was present at the point of sale.

---

[1]  LSP 2017 Product Catalog, p. 95. https://22970-presscdn-pagely.netdna-ssl.com/wp-content/uploads/2017/04/LSP2017Catalog.pdf (last accessed November 22, 2017); *see also* 2014 Product Catalog, p. 117. https://www.ebarnett.com/ProductDocument/10139/1322000_Brochure.pdf (offering the same terms) (last accessed November 30, 2017).

CLASS ACTION COMPLAINT

35.    Upon information and belief, Defendants knew of failures from subrogation lawsuits to which they were parties, as well as from consumer complaints made directly to one or both of the Defendants.

36.    Despite their knowledge, Defendants did not disclose to their customers or prospective purchasers that there was a substantial risk that its Braided Lines would manifest the defect (i.e., break at the compression nut and insert).

37.    Consumers who purchased the Braided Lines had no way of knowing that the lines were defective at the point of sale.

38.    Upon information and belief, the defect is a materials flaw stemming from Defendants' use of substandard materials or combination of materials known to crack and fracture.

39.    Specifically, LSP uses a low-grade brass material for its compression nuts and inserts that is brittle, degraded, and highly susceptible to stress corrosion cracking and branching fractures.

40.    Defective Braided Lines, however, are still being sold and installed in residential and commercial buildings throughout California and across the country.

41.    Under normal and foreseeable conditions, the brass material used for compression nuts and inserts in LSP's Braided Lines cracks, fractures, and otherwise deteriorates, making it thin and brittle when used for its intended purpose. The defect, when combined with expected water pressure, causes the cracks and fractures in the brass material of the Braided Lines to expand, making

CLASS ACTION COMPLAINT

the connection lose strength and eventually break. When inferior brass components are subjected to long term stresses, like those from constant pressure, the component fractures and eventually fails altogether without warning to the unsuspecting consumer.

42.     When this happens, normal water pressure forces a strong, uncontrolled spray of water through the open-ended water line. The release of water continues until a person becomes aware of the Braided Line's failure and shuts off the water at the source. Often such a break occurs when no one is home or in the particular area of the house where the break occurs, and therefore, results in flooding.

43.     Stress corrosion cracks and branching fractures in low-grade brass materials are well-known in the plumbing industry. Defendants knew or were reckless in not knowing that by selecting an inferior grade of brass they were creating a product that would prematurely fail.  The defect was present at the time of manufacture and at the point of sale to Plaintiffs and the Class, who did not have knowledge of the defect.

44.     Despite Defendants' claims of durability and heavy-duty craftsmanship, the compression nuts and inserts on its Braided Lines fail to adhere to standards in the plumbing industry.

45.     The materials defect in LSP's compression nut on its Braided Lines is present at the time of manufacture and at the point of sale to purchasers, who are

CLASS ACTION COMPLAINT

not aware of the defect nor are forewarned of the consequences of cracks, fractures, breakage, and failures of the compression nuts and inserts.

**E.    Inadequate Labeling and Warnings**

46.    Defendants had a duty to provide warnings as to how their Braided Lines could break under normal use because of their defective nature.  Specifically, the label fails to warn that the Braided Lines will break due to stress corrosion cracking, branching fractures and expected water pressure, as described above.

47.    The label also fails to identify the gravity of the hazards that can result from the breaking of the line and that such failure is likely to cause water damage, flooding, and even catastrophic flooding.  The label contains no warnings regarding how to avoid these risks.

48.    Without proper warnings, Plaintiff and Class Members were left on their own to determine whether their Braided Lines were about to fail as a result of their defect.  The reasonable expectation of a consumer of the Braided Lines is that the life expectancy of a supply line connected to a toilet, for example, will equal or surpass that of the toilet (15 years of average life expectancy), unless warned or informed by the manufacturer otherwise.

49.    Defendants have knowledge of the defect and have been notified by past lawsuits that consumers have experienced Braided Lines that have experienced breaks and bursts, which have led to significant incidental and consequential damages, and that were filed prior to the purchase and installation date of Plaintiff's

CLASS ACTION COMPLAINT

Braided Line.[2]

**F.    Plaintiff and the Class Suffered Damages**

50.    Plaintiff and Class Members have suffered harm as a result of Defendants' actions because their Braided Lines contained a material defect which caused the Braided Lines to break, resulting in harm not only to the Braided Lines, but also to other real and personal property.

51.    In addition, because of the flooding that actually has occurred or will occur due to the defect described herein, there is a serious risk of harm where flooding takes place around electrical outlets, appliances, and related household items that could electrocute anyone who comes into contact with or near those items.

52.    Plaintiff and Class Members had a reasonable expectation that the service life of the Braided Lines was at least 15 years, which would equate to the same useful life as the plumbing component (e.g., toilet) to which it was affixed.

53.    The Braided Line materials defect, however, caused the lines to experience premature failure that is disproportionate to the age of the component or to the age of the plumbing fixture (e.g., toilet, faucet, etc.).

---

[2] *See*, *e.g.*, *Mayeux v. LSP Products Group Inc., et al.*, No. 1:14-cv-106 (W.D. La.), filed on Jan. 22, 2014 (alleging that the plaintiff suffered property damage and personal injuries from a slip and fall due to flooding in his home from a defective LSP stainless-steel supply line); *Elec. Ins. Co. v. BrassCraft Mfg. Co.*, No. 10-cv-435-PB, 2012 U.S. Dist. LEXIS 61226, at *2 (D.N.H. May 2, 2012) (subrogation litigation in which BrassCraft alleged co-defendant LSP's fittings are defective).

CLASS ACTION COMPLAINT

54.     The injuries sustained by Plaintiff and Class Members flow directly from the core common facts surrounding Defendants' misconduct, including without limitation, that: (a) the Braided Lines suffer from a materials defect known to the Defendants that caused them to break and fail; (b) the Braided Lines were defective and unsuited for their intended use at the time of sale; (c) Defendants did not provide adequate warnings and disclosures concerning the defective nature of the Braided Lines; and (d) despite their knowledge of the defect, Defendants failed to provide any public notice or warning, or institute a recall to repair or replace the defective Braided Lines.

55.     The damages suffered by Plaintiff and Class Members include, without limitation: (a) amounts paid for the defective Braided Lines; (b) amounts paid to remediate real and personal property damage caused by flooding after the failure of a Braided Line; (c) amounts paid to replace the defective Braided Lines; and (d) expenses incurred for incidental and consequential damages.  Plaintiff and Class Members also lost the benefit of the bargain with respect to their purchase of the Braided Lines in that they would not have purchased them if they had known of the defect that existed at the point of sale, or they would not have paid the price they paid, wrongly believing that the Braided Lines were not defective.

56.     Plaintiff and her counsel have found complaints from across the country concerning the problems and defect described herein, including numerous lawsuits against LSP to recover monies paid by various homeowners and their

CLASS ACTION COMPLAINT

insurers for flooding and related property damage due to LSP's defective supply line.

## CLASS ACTION ALLEGATIONS

57.     This action is brought and is properly maintained as a class action pursuant to Fed. R. Civ. P. 23 on behalf of a class defined as follows:

> All individuals and entities in the State of California that purchased and/or owned LSP Braided Lines (the "Class" or "Class Members").

58.     Plaintiff reserves the right to redefine the Class based upon further investigation and discovery before the class is certified.

59.     The Class is so numerous that individual joinder of all Class Members is impracticable.  The actual number of Class Members is unknown at this time, but numbers in the hundreds or thousands. The true number of Class Members is likely to be known by Defendants, particularly LSP, and may be ascertained through their books and records, and through discovery of their retailers and distributors.

60.     There are numerous questions of law and fact that are common to Plaintiff and the Class and that predominate over any questions that may affect individual Class Members, including, without limitation:

> a.   Whether LSP's Braided Lines are defective;
>
> b.   Whether LSP's Braided Lines suffer from a common materials defect;
>
> c.   Whether the defect with respect to LSP's Braided Lines results

CLASS ACTION COMPLAINT

in the lines being prone to break and failure to perform the use
for which they were intended;

d. Whether Defendants knew or should have known of the defect
in the Braided Lines prior to putting them into the stream of
commerce for purchase by Plaintiff and the Class;

e. Whether Defendants fraudulently concealed the defect from
Plaintiff and Class Members;

f. Whether Defendants properly advised consumers about the
likelihood of the Braided Lines' premature failure;

g. Whether Defendants owed a duty to Plaintiff and the Class to
exercise reasonable and ordinary care in the formulation, testing,
material selection, manufacture, warranting and marketing of the
Braided Lines;

h. Whether Defendants breached their duty to Plaintiff and the
Class by manufacturing, designating materials, and selling to
Plaintiff and the Class and/or their agents defective Braided
Lines;

i.  Whether Defendants breached their duty to Plaintiff and the
Class by failing promptly to remove the defective Braided Lines
from the marketplace or take other remedial action;

j. Whether the Braided Lines fail to perform in accordance with

CLASS ACTION COMPLAINT

the reasonable expectations of ordinary consumers;

k.  Whether the Braided Lines fail to perform as advertised,
    marketed and warranted;

l.  Whether Defendants breached implied warranties to Plaintiff
    and the Class by selling Braided Lines that were not of a
    merchantable quality, nor fit for the ordinary purpose for which
    they were sold;

m. Whether Defendants' conduct violates California Business and
    Professions Code sections 17200, *et seq*.;

n.  Whether Plaintiff and the Class are entitled to compensatory
    damages, and the amount of such damages for the replacement
    and remediation of the Braided Lines;

o.  Whether Defendants has been unjustly enriched by its conduct,
    as alleged herein;

p.  Whether Defendants should be ordered to disgorge all or part of
    the profits they received from the sale of their defective Braided
    Lines; and

q.  Whether Defendants should be required to notify all members of
    the Class about the risks of their defective Braided Lines.

61.   Plaintiff has the same interests in this matter as all members of the
Class, and her claims are typical of all Class Members.  As a result of the uniform

20                                   CLASS ACTION COMPLAINT

materials defect inherent in the Braided Lines, the Braided Lines have failed and will continue to prematurely fail, causing Plaintiff and Class Members to suffer damages in the form of unreimbursed costs associated with replacing the Braided Lines and remediating flood damage.

62.    Plaintiff will fairly and adequately represent the interests of the Class Members, and she does not have interests adverse to the Class.  Plaintiff is committed to pursuing this action, and she has retained competent counsel to do so. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class, and they have the financial resources to do so.

63.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class Members would as a practical matter be dispositive of the interests of non-party Class Members.

64.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to the Class as a whole.  The members of the Class are entitled to injunctive relief as set forth below.

65.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3)

CLASS ACTION COMPLAINT

because, as set forth above, questions of law and fact common to the Class predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Furthermore, the likelihood that individual Class Members would prosecute separate actions is remote given the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of damages at issue for each individual Class Member.  This action will be prosecuted in a manner to ensure the Court's able management of this case as a class action, and Plaintiff knows of no difficulty that she would encounter in the management of this litigation that would preclude its maintenance as a class action.

## **FRAUDULENT CONCEALMENT**

66.    At all relevant times, Defendants affirmatively concealed from the Plaintiff and Class Members the materials defect inherent in the Braided Lines.

67.    Defendants had a duty to inform Plaintiff and Class Members of the defect, about which Defendants knew or should have known. Specifically, LSP has known for years of the problem and defect outlined herein, including through various complaint forums and as the result of numerous suits being filed against LSP by various insurance companies. Notwithstanding their duty to inform Plaintiff and Class Members, LSP has never disclosed the defect to Plaintiff and the Class.

68.    Plaintiff and Class Members could not have discovered the defect or

22

Defendants' attempts to avoid disclosure of the defect alleged herein.  Thus, the running of the applicable statutes of limitation have been tolled with respect to any claims that Plaintiff and Class Members have brought or could have brought as a result of the unlawful or fraudulent course of conduct described herein.

69.     In addition, Defendants are estopped from pleading the statute of limitations as a defense because they failed to disclose facts that they were obligated to disclose concerning the concerning the defect in the Braided Lines. They actively concealed and misrepresented to Plaintiff and Class Members facts that were essential to understanding that the Plaintiff and Class Members had claims against them. Defendants thus acted to prevent Plaintiff and Class Members from learning that they possessed claims against the Defendants.  Had Plaintiff and Class Members been aware of the facts which the Defendants misrepresented and concealed, they would have commenced suit against the Defendants before the running of any statute of limitations alleged to be applicable to this case.

**FIRST CAUSE OF ACTION**
**Violations of Song Beverly Consumer Warranty Act (Cal. Civ. Code §§ 1790,**
***et seq.*)**
**On Behalf of the Class**

70.     Plaintiff incorporates by reference each of the foregoing allegations.

71.     Plaintiff brings this claim on behalf of herself and the Class.

72.     Plaintiff and Class Members are buyers within the meaning of Cal. Civ. Code § 1791(d).

CLASS ACTION COMPLAINT

73.     Plaintiff bought a Braided Line manufactured and sold by Defendants via a third party independent contractor from a retail establishment engaged in the practice of selling consumer goods in California.

74.     At the time of purchase, Defendants were in the business of manufacturing, distributing and selling Braided Lines.

75.     Defendants' express and implied warranties accompanied the sale of the Braided Lines.

76.     Defendants' Braided Lines were defective at the time of purchase. The Braided Lines were delivered with a serious defect in breach of Defendants' express and implied warranties.

77.     At the time of purchase, Defendants' Braided Lines were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which the goods are used.

78.     Defendants' actions, as complained of herein, breached their express and implied warranties in violation of the Act including but not limited to California Civil Code sections 1791.1 and 1791.2.

79.     Defendants breached their express and implied warranties because the Braided Lines suffered from an inherent, latent defect at the time of sale and thereafter were not fit for their intended purpose.  The inherent, latent defect includes but is not limited to the defective materials used for the Braided Lines compression nut and insert.

CLASS ACTION COMPLAINT

80.     Defendants' misconduct was a substantial factor in causing Plaintiff's and the Class' harm, damages and economic losses.  As a direct and proximate result of Defendants' Braided Lines being defective at the time of purchase, being below the quality of similar goods of acceptable condition in the trade at the time of purchase, and being unfit for ordinary purposes for which that particular type of good is generally used at the time of purchase, Plaintiff and Class Members have suffered damages to property both real and personal in an amount to be determined at trial.

81.     Plaintiff and the Class suffered harm, damages and economic losses, and Plaintiff and the Class will continue to suffer such harm, damages and economic loss in the future.  In addition, Plaintiff and the Class have been harmed and suffered actual damages given that the Braided Lines are substantially certain to fail before their expected useful life has run.

82.     Defendants' conduct was gross, reckless, and in bad faith or willful disregard of the rights and interests of Plaintiff and the Class.  Defendants acted intentionally, maliciously, and oppressively, with a willful and conscious disregard of the rights of Plaintiff and the Class, so as to constitute oppression, fraud, or malice under the law.

83.     Plaintiff is entitled to damage and other legal and equitable relief, including, but not limited to, all incidental and consequential and general damages resulting from Defendants' failure to comply with its obligations under the Act.

CLASS ACTION COMPLAINT

84.   Plaintiff is entitled under the Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action.

85.   Plaintiff is entitled to, in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages in that the Defendants have willfully failed to comply with its responsibilities under the Act.

## SECOND CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### On behalf of the Class

86.   Plaintiff incorporates by reference each of the foregoing allegations.

87.   Defendants made implied warranties concerning the Braided Lines, including but not limited to the warranty of merchantability.

88.   Defendants intended that their implied warranties extend to and benefit consumers of their Braided Lines.

89.   Plaintiff and the Class are purchasers of Defendants' Braided Lines.

90.   At the time of these purchases, Defendants were in the business of selling the Braided Lines.

91.   Defendants breached their implied warranty of merchantability for the Braided Lines.

92.   The Braided Lines suffered from an inherent, latent defect at the time of

26

sale and thereafter were not fit for their intended purpose. The defects include, but are not limited to, the Braided Lines' defective materials.

93.    The Braided Lines were not of the same quality as those generally acceptable in the trade, were not fit for the ordinary purposes for which such goods are used, were not adequately contained, packaged, and labeled, had inadequate instructions, and/or did not measure up to the promises or facts stated about the product.

94.    At the time the Braided Lines were purchased, Defendants knew or had reason to know that purchasers and/or installers of the Braided Lines would justifiably believe that they were of the same quality as those generally acceptable in the trade, were fit for the ordinary purposes for which such goods are used, were adequately contained, packaged, and labeled, had adequate instructions, and/or measured up to the promises or facts stated about the product.

95.    Plaintiff and the Class suffered harm, damages and economic losses, and Plaintiff and the Class will continue to suffer such harm, damages and economic loss in the future.

96.    Defendants' misconduct was a substantial factor in causing and proximately caused Plaintiff's and the Class' harm, damages and economic losses.

97.    Defendants' conduct was gross, reckless, and in bad faith or willful disregard of the rights and interest of Plaintiff and the Class. Defendants acted intentionally, maliciously, and oppressively, with a willful and conscious disregard

CLASS ACTION COMPLAINT

of the rights of Plaintiff and the Class, so as to constitute oppression, fraud, or malice under the law.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty**
**On behalf of the Class**

98.   Plaintiff incorporates by reference each of the foregoing allegations.

99.   Plaintiff brings this claim on behalf of herself and the Class.

100.   As fully pled above, Defendants had knowledge of the defect to its Braided Lines and that these Lines pose a serious safety risk to consumers like Plaintiff and Class Members.

101.   Defendants expressly represented and warranted to Plaintiff and Class Members by and through oral and written statements, descriptions, and affirmations of fact through its website, print advertising, and marketing materials that the quality of their Braided Lines was safe and fit for their intended purposes.

102.   Defendants expressly represented and warranted the quality of the Braided Lines against defects in materials and workmanship for a period of at least one year, promising to replace any part of this plumbing product which proves to be defective in material or workmanship under normal use.

103.   Defendants intended that their express warranties extend to and would benefit purchasers of their Braided Lines, including but not limited to, warranting that the Braided Lines were free of defects such that they would properly perform as intended.

28                                    CLASS ACTION COMPLAINT

104.    Plaintiff and the Class purchased Defendants' defective Braided Lines.

105.    Defendants breached their warranties concerning the Braided Lines.

106.    The LSP Braided Lines are produced using a grade of brass for its compression nut inserts that is known to crack, corrode, and fracture and which is substantially certain to fail when used for its intended purpose due to Defendants' choice of materials.

107.    Plaintiff and the Class Members have incurred damages including but not limited to the destruction of their Braided Line, water damage to their homes, water damage to their personal property, and loss of use of their residences during repairs as described herein as a direct and proximate result of Defendants' breach.

## FOURTH CAUSE OF ACTION
**Violations of Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*
On behalf of the Class**

108.    Plaintiff incorporates by reference each of the foregoing allegations.

109.    Defendants engaged in unlawful and unfair business practices.

110.    Defendants' misconduct constituted unlawful business acts or practices within the meaning of California Business & Professions Code §§ 17200, *et seq*. Defendants' unlawful business acts or practices include but are not limited to violations of California Civil Code § 1790, as well as Defendants' various breaches of its duties under tort law and their warranty obligations.

111.    Defendants committed unfair business practices by:

a.    Engaging in conduct as alleged herein that is immoral, unethical,

29

oppressive, unscrupulous, or substantially injurious to Plaintiff and the other Class Members;

b.   Engaging in conduct as alleged herein where the gravity of harm to

Plaintiff and Class Members from Defendants' conduct far outweighs any utility of such conduct; and

c.   Engaging in conduct as alleged herein that undermines or violates the stated policies underlying the Song-Beverly Act, which seeks to protect consumers and enforce warranty obligations related to consumer goods. Such conduct thus provides a sufficient predicate for Plaintiff's and Class Members' claims for unfair business practices.

112.   Defendants' unlawful and unfair business acts and practices continue through the date of this Complaint's filing.

113.   Plaintiff and the Class are entitled to and request restitution and disgorgement of all profits paid to Defendants as a result of their unfair and unlawful business practices.

114.   Plaintiff and Class Members also seek an order enjoining Defendants from continuing to engage in unlawful and unfair business practices, and other acts prohibited by law.  In addition, Plaintiff and Class Members are entitled to attorneys' fees, costs, and other relief as appropriate.

CLASS ACTION COMPLAINT

# FIFTH CAUSE OF ACTION
## Negligence
## On behalf of the Class

115.    Plaintiff incorporates by reference each of the foregoing allegations.

116.    Plaintiff brings this claim on behalf of herself and the Class.

117.    Defendants were negligent in that they failed to use reasonable care when they created, manufactured, assembled, labeled, tested, distributed and sold their Braided Lines.

118.    As the manufacturer and/or seller of a consumer product, Defendants owed a duty to Plaintiff and the Class to provide a safe and quality product, and a duty to provide a product that would perform as intended and expected.  Defendants also owed a duty to Plaintiff and the Class to provide adequate instructions and warnings for proper and safe use of the product.  Defendants further owed a duty to provide Plaintiff and the Class with information related to the Braided Lines' reasonable expected lifespan and information related to its maintenance and replacement. Defendants owed a duty to disclose to the consumer known defects, yet failed to do so to the detriment of the Class.  In addition, Defendants had a post-sale duty to warn consumers of known defects but failed to do so.

119.    Defendants breached each of these duties.

120.    As a direct and proximate result of Defendants' negligence, lack of care and other wrongful acts, Plaintiff and the Class Members have incurred damages in an amount to be determined at trial.

CLASS ACTION COMPLAINT

121.   As a result of Defendants' negligence, Plaintiff and Class Members have suffered economic losses for the damages for inadequate value, cost of repair and replacement of their defective Braided Lines, as well as damage to other real and personal property that resulted from a sudden and dangerous failure of the Braided Lines, causing flooding to the property of Plaintiff and the Class Members.

122.   The damages suffered by Plaintiff and the Class Members were proximately caused by a negligent misrepresentation made by Defendants, corporations that are the business of supplying information for the guidance of consumers and actively hold itself out to be the "quality standard bearer in water connectors and valves" with "performance and durability [that] is unmatched in the market place."

**SIXTH CAUSE OF ACTION**
**Negligent Failure to Warn**
**On behalf of the Class**

123.   Plaintiff incorporates by reference each of the foregoing allegations.

124.   Plaintiff brings this claim on behalf of herself and the Class.

125.   Defendants manufactured, sold and/or distributed defective Braided Lines to Plaintiff and the Class, and which were defective from the time that Braided Lines were manufactured.

126.   Defendants knew or reasonably should have known that their Braided Lines were defective and dangerous and/or were likely to be dangerous when used in a reasonably foreseeable and expected manner.

CLASS ACTION COMPLAINT

127.   Defendants knew or reasonably should have known that Plaintiff and the Class would not realize that their Braided Lines were defective and posed a danger of causing substantial property damage, both to the product itself and the real and personal property of Plaintiff and the Class.

128.   Defendants failed to adequately warn of the danger or instruct Plaintiff and the Class on the safe use of the Braided Lines, and further, failed to warn Plaintiff and the Class of the risks associated with minute fractures of the compression nut and insert.

129.   A reasonable manufacturer, distributor, assembler, or seller under the same or similar circumstances would have warned of the dangers or instructed on the safe use of the product, including, without limitation, by providing detailed installation and maintenance instructions together with warnings to periodically inspect and/or replace the Braided Lines.

130.   As a direct and proximate result of the defective condition of the Braided Lines, Plaintiff and the Class members have incurred damages in an amount to be determined at trial.

131.   After learning that its Braided Lines could suddenly break, Defendants had a post-sale duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of its Lines, even when used for their intended purpose.

132.   Defendants' negligent failure to warn or instruct Plaintiff and the Class

CLASS ACTION COMPLAINT

was a substantial factor in causing the harm to Plaintiff and Class, placing their safety and property at risk.

**SEVENTH CAUSE OF ACTION**
**Strict Liability -- Defect and Failure to Warn**
**On behalf of the Class**

133.   Plaintiff incorporates by reference each of the foregoing allegations.

134.   Plaintiff brings this claim on behalf of herself and the Class.

135.   Defendants manufactured, sold and/or distributed defective Braided Lines to Plaintiff and the Class.

136.   The Braided Lines that Defendants manufactured, sold and/or distributed were defective, and the Lines were defective when they left Defendants' control.

137.   Defendants knew, or should have known, that the Braided Lines contained a non-obvious danger in their material composition.  Defendants knew that the Braided Lines were highly susceptible to failure under expected installation conditions, and that consumers would not repeatedly replace their Braided Lines without an instruction to do so.

138.   Defendants knew that Plaintiff and the Class would use the Braided Lines without first inspecting their durability.  Defendants failed to inform Plaintiff and the Class as to the Braided Lines' susceptibility to sudden catastrophic failure. Defendants failed to warn consumers that it was necessary to periodically inspect and replace the Braided Lines, even if the Lines had not yet failed or even if the

CLASS ACTION COMPLAINT

Lines were still within the warranty period measured after the consumer's date of purchase of the Braided Line.

139.   Braided Lines were defective due to inadequate warnings and inadequate inspection and testing, and inadequate reporting regarding the results of quality control testing and safety inspections, or lack thereof.  In addition, there is a serious risk of harm where the defect results in flooding that takes place around electrical outlets, appliances, and related household items that could electrocute those who come into contact with or near those items.

140.   Had Plaintiff and the Class been adequately warned concerning the likelihood that Braided Lines would fail, they would have taken steps to avoid damages by replacing the Braided Lines or by not purchasing them.

141.   After learning that their Braided Lines' compression nuts and inserts could fracture and break, Defendants had a post-sale duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of their Lines, even when used for their intended purpose.

142.   As a direct and proximate result of the defective condition of the Braided Lines, Plaintiff and the Class Members have incurred damages to both their Braided Lines and to their personal and real property in an amount to be determined at trial.

CLASS ACTION COMPLAINT

# EIGHTH CAUSE OF ACTION
## Unjust Enrichment
## On behalf of the Class

143.    Plaintiff incorporates by reference each of the foregoing allegations.

144.    Plaintiff brings this claim on behalf of herself and the Class.

145.    Substantial benefits have been conferred on Defendants by Plaintiff and the Class by purchasing the Braided Lines and Defendants knowingly and willingly accepted and enjoyed those benefits.

146.    Defendants knew or should have known that payments received from Plaintiff and the Class for the Braided Lines were paid with the expectation that they would perform as represented.

147.    Defendants' retention of these benefits is inequitable.

148.    Plaintiff and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest.

149.    As a direct and proximate cause of Defendants' wrongful conduct and unjust enrichment, Plaintiff and the Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.

# NINTH CAUSE OF ACTION
## Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and Fed. R. Civ. P. 57
## On behalf of the Class

150.    Plaintiff incorporates by reference each of the foregoing allegations.

151.    Plaintiff brings this claim on behalf of herself and the Class.

152.    Declaratory relief is intended to minimize "the danger of avoidable

36                                    CLASS ACTION COMPLAINT

loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

153. There is an actual controversy between Defendants and Plaintiff and Class Members concerning:

a. whether the Braided Lines have a materials defect that causing them to fail;

b. whether Defendants knew or should have known of the defect;

c. whether Defendants failed to warn against the potential unsuitability of its defective Braided Lines; and

d. whether Defendants knowingly attempted to remediate the defect in their Braided Lines before Plaintiff and the Class sustained any damage and without providing notice to Plaintiff and the Class about the defect.

154. Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

155. Despite the repeated failures of their Braided Lines, Defendants refused to acknowledge that its product is defective.

156. Accordingly, based on Defendants' failure to act, Plaintiff seeks a declaration that the Braided Lines are defective in their workmanship, material choices, and labeling, as alleged herein. The defective nature of the Braided Lines

CLASS ACTION COMPLAINT

is material and requires disclosure to all persons who own the Braided Lines.

157.   The declaratory relief requested herein will generate common answers that will settle the controversy related to the alleged defective materials and labeling of the Braided Lines and the reasons for their repeated failure. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief, individually and on behalf of the Class:

a.    an Order certifying the Class, appointing Plaintiff as the Class Representative, and appointing the undersigned counsel as Class Counsel;

b.    an award for equitable and injunctive relief enjoining the Defendants from continuing to pursue the policies, acts and practices described in this Complaint;

c.    an award of damages and enhanced damages under statutory and common law as alleged in this Complaint, in an amount to be determined at trial;

d.    an award of pre-judgment and post-judgment interest at the maximum rate allowable by law;

e.    an award of reasonable attorneys' fees and reimbursement of costs

CLASS ACTION COMPLAINT

incurred by Plaintiff and Plaintiff's counsel in connection with this action; and

f.      such other and further relief as the Court deems just and proper.

### **JURY DEMAND**

Plaintiff demands a trial by jury on all claims set forth above.

Dated: April 12, 2018.                          Respectfully submitted,


By:     /s/ Todd M. Friedman
        Todd M. Friedman
        tfriedman@toddflaw.com
        Law Offices of Todd M. Friedman
        21550 Oxnard St., Suite 780
        Woodland Hills, CA 91367


        Gregory F. Coleman*
        greg@gregcolemanlaw.com
        Lisa A. White*
        lisa@gregcolemanlaw.com
        GREG COLEMAN LAW PC
        First Tennessee Plaza
        800 S. Gay Street, Suite 1100
        Knoxville, TN 37929
        Telephone: (865) 247-0080
        Facsimile: (865) 522-0049

        *pro hac vice pending
        Attorneys for Plaintiff
        and the Putative Class

CLASS ACTION COMPLAINT